Ferguson v. Truax, 132 Wis. 478.

FERGUSON, by guardian *ad litem,* Respondent, vs. TRUAX, imp., Appellant.

*January 9—January 29, 1907.*
*May 25—June 20, 1907.*

*Negligence: Personal injuries: Fall of passenger elevator: Notice of defects: Evidence: Who are passengers: Special verdict: Instructions to jury: Arguments of counsel: Immaterial errors: Judgment: Several liability: Excessive damages.*

1. In an action for injuries sustained through the fall of a passenger elevator in an office building, a letter received by defendant, the owner of the building, from his agents about two years before the accident, in which they stated that the janitor of the building "again reports the elevator machinery out of order," and that the electrician of the power company "condemns the whole machine and claims it will have to be built over before it will work right," was properly admitted in evidence for the purpose of showing notice of defects.

2. A finding by the jury that there was a want of ordinary care on the part of defendant to keep the elevator in an ordinarily safe condition is *held* to be sustained by the evidence.

3. A boy riding in a passenger elevator in a building on his way to an office occupied by a tenant on an upper floor, to find out whether he was wanted by such tenant for an errand, was a passenger; but not so if, for prior misconduct furnishing reasonable ground for excluding him from the elevator, he had been permanently prohibited from riding therein.

4. To make such prohibition effectual it was not necessary to repeat it every time the boy came about the building.

5. Refusal to submit for special verdict the question whether plaintiff was riding in the elevator merely for his own accommodation or amusement was not error, where, in submitting the question whether he was a passenger, the court charged that he was not a passenger if at the time of the accident he was engaged in riding up and down for pastime.

6. A requested instruction to the effect that plaintiff was not a passenger if at the time of the accident he "was engaged in riding up and down in the elevator as he himself testified when his deposition was given" nearly a year before the trial, was properly refused, where the testimony referred to was inconsistent with that given by plaintiff at the trial.

7. When plaintiff's counsel in argument to the jury stated that the question whether plaintiff was a passenger was the turning

point in the case, the court at first overruled an objection to such remark, but afterwards changed its ruling and stated that in a special verdict there was no turning point. *Held*, that there was no error requiring reversal.

8. In a tort action based on negligence one of two defendants cannot complain because judgment is rendered against him alone.

9. An award of $8,000 for serious and permanent injuries sustained by a boy about fourteen years old through the fall of a passenger elevator is *held* not so excessive as to justify the supreme court in disturbing the verdict.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This action was commenced June 9, 1904, to recover damages sustained by the plaintiff December 2, 1903, while riding in the defendant's elevator. At the time of the injury the plaintiff was thirteen years and nine months of age. The grounds upon which the plaintiff seeks to recover, as alleged in the complaint, are to the effect (1) that the sheave timbers placed at the top of the shaft to support the sheave wheel, over which the wire cable ran, raising and lowering the elevator, were too low, and that they were only two feet above a point where the top of the elevator would be when the bottom of the elevator was at the fourth floor; (2) that one of the balls of the governor had been broken off some weeks prior to the date of the accident, and that in such crippled condition the elevator was operated; (3) that the elevator was operated without any safety devices attached to the cable, which devices are in common use on such elevators and operate automatically to shut off the power and set the brake, thereby stopping the elevator when it moves above the fourth floor in rising or below the lower floor in dropping; (4) that there was no automatic stop properly set in connection with the motor machinery and power so as to shut off the power and set the brake and stop the elevator after passing the top floor and before striking the sheave timbers above. The answer is a general denial.

At the close of the trial the jury, by direction of the court, found in effect (1) that the defendant *Peter Truax* was the owner of and in possession and control of the building, known as the Truax Building, at the corner of Tower avenue and Eleventh street, in the city of Superior, Wisconsin, on December 2, 1903; (2) that the passenger elevator in the said Truax Building, in the said city of Superior, on December 2, 1903, did fall from the top of the elevator shaft to the bottom thereof; (3) that the plaintiff was in and was injured by such falling of the elevator. The jury, under the instruction of the court, further found (4) that the plaintiff, *Eddie Ferguson,* was a passenger on the elevator in the Truax Building mentioned on December 2, 1903, when it fell; (5) that the defendant *Peter Truax,* prior to and down to the time of the accident, had not used ordinary care to keep the elevator in an ordinarily safe condition for the carrying of passengers therein; (6) that the want of such ordinary care was the proximate cause of the plaintiff's injury; (7) that no want of ordinary care on the part of the plaintiff, *Eddie Ferguson,* contributed to cause his injury; (8) and that $8,000 would fairly compensate the plaintiff for his said injuries.

The court thereupon denied the motions of the defendant *Truax* to strike out the answer "Yes" of the jury to question No. 4 and to substitute in lieu thereof the answer "No," and to strike out the answer "No" of the jury to question No. 7 and to substitute in lieu thereof the answer "Yes;" and also denied the motion of the defendant *Truax* for judgment on said special verdict, when so amended, in favor of the defendant *Truax* dismissing the complaint, with costs. From the judgment entered upon such special verdict, as returned by the jury, in favor of the plaintiff for the amount stated, the defendant *Truax* appeals.

For the appellant there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.* They contended,

*inter alia,* that defendant was not a common carrier. *Griffin v. Manice,* 166 N. Y. 188, 52 L. R. A. 922; *Edwards v. Mfrs. Bldg. Co.* 27 R. I. 248, 61 Atl. 646; *Seaver v. Bradley,* 179 Mass. 329, 60 N, E. 795; *Burgess v. Stowe,* 134 Mich. 204, 96 N. W. 29; *Bigby v. U. S.* 103 Fed. 597; *Allen v. Sackrider,* 37 N. Y. 341. Defendant is not liable to trespassers or mere licensees. 10 Am. & Eng. Ency. of Law (2d ed.) 962; *Cahill v. Layton,* 57 Wis. 600; *Truax v. C., St. P., M. & O. R. Co.* 83 Wis. 547; *Gorr v. Mittlestaedt,* 96 Wis. 296; *Hupfer v. Nat. D. Co.* 114 Wis. 279, 284; *Muench v. Heinemann,* 119 Wis. 441. Mutuality of interest is the test of invitation and of liability for negligence. *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 105, 113; *Hupfer v. Nat. D. Co.* 114 Wis. 279; *Muench v. Heinemann,* 119 Wis. 441; *Plummer v. Dill* 156 Mass. 426, 31 N. E. 128; *Larmore v. Crown Point I. Co.* 101 N. Y. 391, 4 N. E. 752; *Barry v. Union R. Co.* 94 N. Y. supp. 449; 3 Current Law, 617, note; *McIntire v. Roberts,* 149 Mass. 450, 14 Am. St. Rep. 432; *Parker v. Portland P. Co.* 69 Me. 173, 31 Am. Rep. 262; *Sievers v. Peters B. & L. Co.* 151 Ind. 642, 50 N. E. 877; *Gibson v. Sziepienski,* 37 Ill. App. 601; *Peake v. Buell,* 90 Wis. 508; *Trask v. Shotwell,* 41 Minn. 66, 42 N. W. 699; *Gibson v. Leonard,* 143 Ill. 182, 32 N. E. 182, 17 L. R. A. 588; *Woodruff v. Bowen* (Ind.) 34 N. E. 1113; *Faris v. Hoberg,* 134 Ind. 269, 39 Am. St. Rep. 261; *Bedell v. Berkey,* 76 Mich. 435, 15 Am. St. Rep. 370. A person who rides in an elevator against the consent of the owner is a trespasser. *Springer v. Byram,* 137 Ind. 15, 36 N. E. 361, 23 L. R. A. 244; *Leavitt v. Mudge S. Co.* 69 N. H. 597, 45 Atl. 558; *Indianapolis St. R. Co. v. Hockett,* 159 Ind. 677, 64 N. E. 633; *Patterson v. Hemenway,* 148 Mass. 94, 19 N. E. 15; *Hansen v. Schneider,* 58 Hun, 60; *Long v. Mut. L. Ins. Co.* 72 N. Y. Supp. 665; *Ingram v. Fosburgh,* 76 N. Y. Supp. 344; *Ball v. Hauser,* 129 Mich. 397, 89 N. W. 49. Any express invitation to plaintiff was unauthor-

ized.  *Springer v. Byram,* 137 Ind. 15, 36 N. E. 361, 364. The authorities are numerous which hold that persons in charge of a railroad train have no authority to bind the company by inviting a person to ride on a train without compensation.  *C., M. & St. P. R. Co. v. West,* 125 Ill. 320, 8 Am. St. Rep. 380; *Cooper v. L. E. & W. R. Co.* 136 Ind. 366, 36 N. E. 272; *McVeety v. St. P., M. & M. R. Co.* 45 Minn. 268, 11 L. R. A. 174; *Toledo, W. & W. R. Co. v. Brooks,* 81 Ill. 292; *Eaton v. D., L. & W. R. Co.* 57 N. Y. 382; *Platt v. C. & N. W. R. Co.* 63 Wis. 511; *Pa. R. Co. v. Langdon,* 92 Pa. St. 21, 37 Am. Rep. 651; *Schiffler v. C. & N. W. R. Co.* 96 Wis. 141; *Cole v. McKey,* 66 Wis. 500, 510.

For the respondent there was a brief by *Ross & Dwyer,* and oral argument by *W. D. Dwyer.*

The following opinion was filed January 29, 1907:

CASSODAY, C. J.  1. Numerous errors are assigned. Several of them turn upon the question whether the evidence is sufficient to sustain the findings of the jury. It is conceded in the brief of counsel for the defendant that the building in question consists of four stories and a basement. At the time of the accident the first floor was rented for storerooms, the second and third floors for offices, and the fourth floor for a business college. The elevator was put in the building in 1896. At the time of the accident and for several months prior to that time the defendant Herbert was janitor of the building, and during portions of the time ran the elevator and paid the elevator boy, Louis Larson, who was about seventeen years of age and was running the elevator at the time of the accident and had been for several hours during each day for three weeks immediately prior to the accident.

The elevator was operated by electric power. One end of a cable was attached to the top of the elevator car and ex-

tended over a sheave or pulley attached to sheave timbers at the top of the elevator shaft. The other end of this cable was fastened to a drum at the bottom of the shaft. The car was raised or lowered by the winding or unwinding of the cable around the drum. The elevator was operated by means of a hand line extending through the car and over a pulley at the top of the elevator shaft. This hand cable is connected with a shifting device attached to the drum in such a manner that the operator, by pulling the hand cable, may cause the elevator to ascend or descend at his will, or he may, by a slight pull of the hand line, merely disconnect the power, in which case the elevator comes to a stop. The elevator was provided with automatic brakes intended to stop the elevator in case of an accident and prevent it from falling. A governor was placed on top of the car. The governor revolved by means of a rope running through a pulley wheel, to which the governor was attached. In case of unusual speed the rapid revolution of the governor would cause the arms to rise. The rise of the arms would trip a lever and set the brakes. The brakes were a pair of chisel dogs with corrugated points. They are designed to grind into the guides or timbers on the sides of the shaft and stop the car. The elevator was provided with a fuse in such a manner that, in case of any extra strain on the car or machinery, the electric current would burn out the fuse and thereby instantly disconnect the power. A clamp was placed on the hand cable, near the bottom of the shaft, in such a position that, if the operator should neglect to pull the hand line in time to stop the car at the bottom floor, the car would come in contact with the clamp, disconnect the power, and stop the car. A device was placed on the drum consisting of one traveling nut, two stationary nuts, and a threaded shaft. The purpose of this device was that, in case the operator should neglect to stop the car at the top floor, the traveling nut would come in contact with the stationary nut and disconnect the

power.   These automatic devices serve no purpose whatever
in the ordinary operation of the elevator.   The only purpose
of the clamp or button on the hand cable and the traveling
nut on the drum is to guard against the carelessness of the
elevator boy in case he fails to pull the hand cable.

On December 2, 1903, while the elevator was being op-
erated by Louis Larson, the plaintiff was in the elevator car.
Claude Luse entered the elevator on the ground floor for the
purpose of riding therein to the fourth floor, where he was
attending the business college.   These three persons rode in
the elevator to the top floor.   The elevator ascended some dis-
tance above the top floor.   The top of the elevator came in
contact with the sheave timbers above, and the power was
not disconnected.   The elevator then fell to the bottom of
the shaft, and the three persons therein, including the plaint-
iff, sustained injuries.   An examination of the elevator after
the accident showed that one of the balls of the governor, the
governor wheel, and certain connecting rods from the gov-
ernor to the automatic brakes had been broken by the striking
of the elevator against the sheave timbers, and that this pre-
vented the automatic brakes from working, which brakes, if
they had worked as they were intended, would have stopped
the elevator in its downward course.   It also appeared from
such examination that the cable that was attached to the top
of the elevator car disconnected from the elevator at the
time that the elevator fell.   The end of the cable at the top
of the elevator car was fastened into a large bolt or pin.   The
pin extended between two beams.   An iron plate was bolted
to the under side of the beams to prevent the head of the bolt
from drawing through between the beams.   The plate broke,
the bolt pulled out and became disconnected from the car,
but remained fastened to the cable.   The appearance indi-
cated that the bolt and plate had been on the elevator car
from the time it was first constructed.

An expert witness on the part of the plaintiff, of large ex-

perience in the construction and repairing of elevators, examined the elevator as it was immediately after the accident, and testified to the effect that there were no buttons or clamps upon that cable or operating line designed to operate automatically. There was no button or clamp at the top of the shaft on the hand cable. When passenger elevators are operated by hand cable in the way mentioned, it is almost always usual to have a button or clamp on this operator's cable. These buttons are usually put upon the operator's cable to cut off the power either at top or bottom of the house, by coming in contact with some part of the car or some device attached to the car. If properly set, by the car striking it it would cut off the power; that is, if the car in going up struck it the power would be cut off. The purpose of such a device on the cable is to prevent the car running higher than a short distance above the floor. There was a device known as an "automatic stop" on that machine. It consists of a drum shaft which is threaded. There are two stationary nuts on this thread and one traveling nut. The drum shaft mentioned is connected with the drum by a gear. What is called a drum is the regular part, and something like a support upon which the cables wind or unwind to raise or lower it even. The drum shaft is propelled by the action of the motor. The motor runs the entire machine, the drum and the drum shaft also. This drum shaft turns the drum by a gear. Assuming that the machine is in operating condition, it does not necessarily turn around whenever this drum turns. "I speak of a traveling nut on this drum shaft. It travels by the revolving of the drum and upon the thread on the shaft." In answer to hypothetical questions he further testified to the effect that, if properly set, a traveling nut, while the elevator is going up, would catch hold at about the level of the landing of the top floor, or a little above that floor, perhaps six inches, and cut off the power. This is done by the traveling nut striking and engaging with the

stationary nut. When it does that, it sets the brakes as well as throws off the power—a mechanical brake and an electrical brake. Assuming this automatic stop to be in proper condition and properly set, the elevator car, running at its full speed, would run about a foot or so after the traveling nut connected with the stationary nut in its ordinary operation. In order to find whether this automatic stop was properly set and adjusted it would have been necessary to take the car to the top or bottom of the house, and then notice or see whether the stationary nuts were so placed as to engage with the traveling nut so as to throw off the power and set the brakes. As the drum by revolving takes up the cable and lifts the elevator to the top floor or a few inches above, the automatic stop should so operate that the traveling nut would engage and connect with the stationary nut so as to cut off the power. The length of the cables taken up or let out by the drum governs more or less the action of the automatic stop. After repairing or putting on a new cable the automatic stop must be changed accordingly. It was necessary to have two balls on the governor, and it would be crippled if one of them should break; and in his opinion it would have been as bad to have both of them off as one, and the governor would not have worked at all if both of them had been off. The governor is a safety appliance device for the purpose of stopping the elevator in case of an accident. That is all the purpose it is intended for. The governor does trip the lever by means of the force of the balls revolving so rapidly. The rapid revolving of the balls does cause the balls to rise. The balls revolving trip the lever and set the brake. Assuming that the governor was in proper condition, the car would not drop to exceed three or four feet. The principal reason for putting the governor and brake on the elevator is to avoid a car falling clear down.

It appears that *Mr. Truax* resided in Eau Claire. Some

eight months prior to the accident his agents at Superior had employed the defendant Herbert to take care of the building—do the janitor work and run the elevator—and Herbert continued in that capacity until after the injury. At times, when Herbert found it necessary to secure assistance, he hired an elevator boy to run the elevator a portion of the time and paid him for his services. The plaintiff's expert, mentioned, testified to the effect that it was usual to inspect passenger elevators every three months to see whether they were in proper condition; that if the automatic stop was in proper condition and everything all right, the car would stop before it struck the sheave timbers. The defendant Herbert, who had had considerable experience as an engineer, testified, in reference to the elevator, to the effect that he never tested it to see whether, in going above the top floor, the mechanical brake or the electrical brake down underneath would shut off the power; that he knew for about three weeks prior to the accident that one of the governor balls was broken; that there was no button on the cable or hoist rope for the purpose of stopping the elevator at the fourth floor; that he knew how the button should be put on; that it should be fastened with a clip and two bolts; that the purpose of it was to cut off the power, which would stop the elevator almost instantly; that while he was so in the employ of *Truax* there was no button nor safety device on the elevator to shut off the power at the fourth floor.

Besides the evidence mentioned, the defendant *Truax,* after identifying certain letters written to him in 1896 by the manufacturers of the elevator and put in evidence by the defendant, on cross-examination testified to the effect that after the elevator was installed he received information from his agents in Superior and other tenants that there was some trouble with the elevator; that it was out of order considerable—a great many times,—and then identified a copy of a

letter received by him from his agents at Superior dated December 28, 1901, which states, among other things:

"The janitor of the Truax Block again reports the elevator machinery out of order, and the electrician of the water, light, and power company refuses to undertake the work of putting it in repair. The last time he had it repaired in Duluth and cost something like $60. They wanted $70, and we don't feel like undertaking this expense without your instructions. The electrician of the water, light and power company states the trouble is not due to lack of care on the part of the janitor, but he *condemns the whole machine* and claims it will have to be built over before it will work right."

That letter was offered and received in evidence, as stated at the time, for the sole purpose of showing that subsequently to the installing of the elevator *Mr. Truax* was notified of its being out of repair and in bad condition—the whole machine. The defendant objected to the last sentence quoted on the ground that it related "to hearsay information of a third person." The objection being overruled, counsel for the defendant stated that he presumed that it was admitted only as showing notice to *Mr. Truax,* and not as any proof of facts therein stated, to which counsel for the plaintiff assented, and the court added: "Just that certain complaints were made." Under the circumstances stated we find no error in so admitting the letter in evidence. There is certainly sufficient evidence in the record to prove that the elevator was defective at the time of the accident. So we are constrained to hold that there is evidence sufficient to support the finding of the jury of want of ordinary care on the part of the defendant *Truax* to keep the elevator in an ordinarily safe condition for the carrying of passengers therein. In fact, counsel made no attempt to have the court change the answer to that question.

2. It is urged with much vigor by counsel for the defendant that the finding of the jury that the plaintiff was a passenger on the elevator when it fell is not sustained by the

evidence, and hence that it was error for the court to refuse
to change the answer of the jury to that question from the
affirmative to the negative. In submitting that question to
the jury the court charged them:

"The answer to this question turns on whether or not the
plaintiff was on his way to the office of Dr. Thompson to find
if he was wanted for an errand when the elevator fell. If
at the time of the accident he was engaged in riding up and
down on the elevator as pastime he was not a passenger.
The burden is upon the plaintiff to prove that he was a pas-
senger by preponderance of the evidence and to reasonable
certainty."

The plaintiff had testified to the effect that at the time of
the accident he was going to see Dr. Thompson, a practicing
physician in the city of Superior, having an office on the
third floor of the building in question, as he had done during
the week and a half immediately preceding the accident; that
a week or so prior to the accident Dr. Thompson had asked
him to come around every morning and run errands for him,
and that he did so and Dr. Thompson paid him for it;
that one morning Dr. Thompson sent him to the Evening
Telegram office, on another occasion he took a message from
Dr. Thompson to a barber on Fifth and Ogden streets, on
another occasion he took a note to the postoffice for Dr.
Thompson, and that he did some other work for Dr. Thomp-
son, and that the doctor paid him for such services; that on
the morning in question he was going in the elevator to see
Dr. Thompson in pursuance of his request to come around
every morning and he would give him work to do. So there
is some evidence tending to prove that the plaintiff was on
his way to the office of Dr. Thompson to find if he was wanted
for an errand when the elevator fell. It is true the plaintiff's
testimony is more or less inconsistent, especially when com-
pared with his examination before the commissioner under
sec. 4096, Stats. (1898), nearly a year prior to the trial.
At the time of the trial the plaintiff was only sixteen years

of age, and the accident occurred more than two years prior to the trial. He had been badly injured, and testified that he was faint during portions of his examination. Dr. Thompson was not a witness in the case. In some respects the plaintiff was corroborated by the elevator boy; but there is considerable evidence to the effect that the plaintiff had, prior to the accident, repeatedly been in the building and riding in the elevator without any apparent business, and at times was ordered not to ride in the elevator, and that he always went away when so notified, and that the plaintiff was riding in the elevator some ten minutes before the accident. The jury saw all the witnesses, and we cannot hold as a matter of law that the finding of the jury, under the charge of the court, to the effect that the plaintiff was on his way to the office of Dr. Thompson to find if he was wanted for an errand when the elevator fell, is not sustained by evidence.

3. The question recurs whether the portion of the charge above quoted was erroneous. In other words, Did the fact that the plaintiff was on his way to the office of Dr. Thompson to find if he was wanted for an errand constitute him a passenger on the elevator when it fell, as a matter of law? Confessedly Dr. Thompson was a tenant of the defendant, having an office on the third floor, accessible by the elevator in question. The rule seems to be well settled that:

"The proprietor of an elevator run for the use of the tenants of an office building and their visitors is a carrier of passengers for hire. The proprietor's compensation is the rental paid him by the tenant, for which he undertakes to carry him and his visitors by elevator." 10 Am. & Eng. Ency. of Law (2d ed.) 946.

This court has held:

"It is the duty of the proprietor of an office building to see that the passenger elevators operated by him therein are properly and safely constructed, and that they are operated with the highest degree of skill commensurate with or proportionate to the possibility of injury to passengers using them." *Oberndorfer v. Pabst,* 100 Wis. 505, 76 N. W. 338.

That was fully sanctioned in *Bremer v. Pleiss,* 121 Wis.. 61, 64, 98 N. W. 945. Both cases are cited approvingly and the same principle of law sanctioned in 1 Hutchinson, Carriers (3d ed.) sec. 100. Numerous other cases are there cited. From what has been said and the authorities cited, it. must be held that under the charge of the court the jury· were justified in finding that the plaintiff was a passenger· on the elevator in question at the time it fell. That he was such passenger, having been thus determined by the jury,. must be regarded as a verity in the case, and hence obviates: the necessity of considering what would have been the rights. of the parties had the plaintiff been a trespasser or a mere licensee—questions argued at great length and under different headings by counsel for the defendant.

4. There seems to be no basis for the claim that error was. committed in refusing to hold as a matter of law that the plaintiff was guilty of contributory negligence, nor in the claim that the special verdict was insufficient in form. The request to submit to the jury a question as to whether the plaintiff was riding in the elevator "merely for his own accommodation or amusement" was expressly submitted in the charge of the court on the fourth question, as already mentioned. The other requests to submit related to evidentiary matters.

5. Error is assigned because the court refused to instruct the jury to the effect that if the plaintiff at the time of the accident was riding up and down in the elevator, as he himself testified in his deposition taken nearly a year before the trial, then he was not a passenger, and they should answer the fourth question in the negative. This court has held quite recently:

"A trial judge should not, in charging the jury, give special significance to the evidence on one side of the controversy by speaking of it in detail, especially to those parts favorable to that side, while not mentioning the opposing evidence; nor should he so charge the jury as to refresh their·

memory as to the testimony on one side of the controversy while not doing so as to that on the other." *Coman v. Wunderlich,* 122 Wis. 138, 143, 99 N. W. 612, citing, approvingly, *Kavanaugh v. Wausau,* 120 Wis. 611, 98 N. W. 550. See, also, *Strasser v. Goldberg,* 120 Wis. 621, 626, 98 N. W. 554; *Schutz v. State,* 125 Wis. 452, 462, 104 N. W. 90; *Horr v. C. W. Howard Co.* 126 Wis. 160, 105 N. W. 668; *Schwantes v. State,* 127 Wis. 160, 190, 106 N. W. 237.

Here the request to charge is subject to the criticism that it required the jury to accept as true testimony given by the plaintiff nearly a year before the trial which was inconsistent with what he testified to on the trial. Such an instruction would have invaded the province of the jury. Id.

6. Errors are assigned for prejudicial remarks of plaintiff's counsel in arguing the case to the jury. The first remark complained of is that the question whether the plaintiff was a passenger in the elevator was the turning point in the case. At first the court overruled an objection to such remark, but afterwards changed its ruling and stated that in a special verdict there is no turning point. We perceive no reversible error in such rulings. Other objections to remarks of the plaintiff's counsel were all sustained, and we find nothing in any of them prejudicial to the defendant. *Lyon v. Grand Rapids,* 121 Wis. 609, 625, 99 N. W. 311.

7. Error is assigned for rendering judgment against the defendant *Truax* alone, without rendering any judgment as to the defendant Herbert. It is well settled that:

"While the law permits all the wrongdoers to be proceeded against jointly, it also leaves the party injured at liberty to pursue any one of them severally, or any number less than the whole, and to enforce his remedy regardless of the participation of the others. While the wrong is joint it is also, in contemplation of law, several." 1 Cooley, Torts (3d ed.) 224.

The same author declares that, when the suit is against several joint wrongdoers, the judgment must be for a single sum against such of the defendants as are found to be liable.

Id. 230. In harmony with the principle of law thus stated, this court has recently held that, in an action of tort against a number of persons jointly, the complaint was properly amended by dismissing the action as to a part of them. *Olwell v. Skobis,* 126 Wis. 308, 316, 317, 105 N. W. 797. We perceive no good reason for holding that the defendant *Truax* is aggrieved by the form of the judgment as entered.

8. We are urged to reverse the judgment on the ground that the damages awarded by the jury are excessive. They are certainly pretty large. But the plaintiff was less than fourteen years of age at the time of the injury. He was taken from the elevator in an unconscious condition. He was found by the doctor to be suffering with a severe shock, apparently injuring the spine and chest, with some discoloration and swelling of the spine, accompanied with severe pain. He was placed in a plaster cast and remained there two months. On removing the plaster cast he immediately fainted and it was found necessary to replace it, and he thereafter remained in the plaster cast seven months longer. At the time of the trial he was still nervous and suffered pain and was unable to sleep nights and could do but little work. His physician, who had attended him from the first, testified to the effect that assuming that the boy had told the truth as to his condition, and taking into consideration his own knowledge of the case, he would say that the boy's condition and symptoms were the result of the accident, and that he would not improve but would grow worse. Such testimony is to some extent corroborated by other witnesses. We do not feel justified in disturbing the verdict. We find no reversible error in the record.

*By the Court.*—The judgment of the superior court of Douglas county is affirmed.

A motion by the appellant for a rehearing was granted, and the cause was reargued on May 25, 1907. The following opinion was filed June 20, 1907:

CASSODAY, C. J.  Upon the former hearing the judgment in favor of the plaintiff was affirmed.  A rehearing was ordered upon the following questions:

"(1) If the plaintiff had been prohibited by the defendant from using the elevator, could the relation of passenger and carrier exist between them at the time of the accident?

"(2) Was the plaintiff's status as a passenger properly submitted to the jury by the instruction under the fourth question of the special verdict?"

The principal controversy in the case is involved in or connected with the submission of that question to the jury. Whether the plaintiff was a passenger on the elevator at the time it fell is the vital question to be finally determined. It is stated by a learned text-writer that:

"As a general rule every person, not an employee, being carried with the express or implied consent of the carrier upon a public conveyance usually employed in the carriage of passengers, is presumed to be lawfully upon it as a passenger. There are two main elements in the legal definition of a passenger: First, an undertaking on the part of the person to travel in the conveyance provided by the carrier; and, second, an acceptance by the carrier of the person as a passenger. Whether either or both of these elements exist is ordinarily a question for the jury." 2 Hutch. Carriers (3d ed.) § 997.

Counsel for the defendant, on the trial, objected to the form of the question on the ground that it was largely in the nature of a general verdict—that the conflict in the evidence, if any, brought out certain well-defined specific issues which should have been submitted to the jury. But, as often held by this court, the form of a special verdict is very much in the discretion of the trial court, and we cannot say that there was any abuse of such discretion in submitting the fourth question of the special verdict. *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 257, 258, 42 N. W. 237; *Mauch v. Hartford,* 112 Wis. 40, 54–59, 87 N. W. 816; *Byington v. Merrill,* 112 Wis. 211, 225, 88 N. W. 26.  Of course, all well-

defined specific issues should have been submitted to the jury, either by the form of the verdict or by instructions, or both.

In lieu of the fourth question submitted counsel for the defendant requested the submission of numerous questions calling for mere evidentiary facts and hence objectionable on that ground, as, for instance: For what purpose was the plaintiff riding in the elevator at the time of the accident? Did he on that morning ride up in the elevator more than once? Had he on that morning previously visited the office of Dr. Thompson? Had the plaintiff prior to the accident been notified by the defendant's agents to keep out of the elevator? One of the questions so requested in lieu of the fourth question of the special verdict was whether, "at the time of the falling of the elevator," the plaintiff was "riding therein merely for his own accommodation or amusement?" But that was in effect covered by a portion of the charge quoted in the opinion on file, as follows: "If at the time of the accident he was engaged in riding up and down on the elevator as pastime he was not a passenger." Counsel for the defendant requested the court to charge the jury to the effect that if, prior to the time of the accident, the plaintiff had been notified by the defendant's agent not to ride in the elevator, or to keep out of the elevator, then that the plaintiff was not a passenger at the time when the elevator fell, and hence that they should answer the fourth question in the negative. The giving of such an instruction would have been equivalent to charging the jury as a matter of law that the plaintiff was not a passenger if he had received such notice. This seems to be based upon the theory that the prohibition of the plaintiff from using the elevator was not a breach of the defendant's contract with Dr. Thompson, and that if it was, "the defendant had the right and power to breach the contract in that respect," without being under any obligations to the plaintiff. As indicated in the opinion on file, "the proprietor

of an elevator run for the use of the tenants of an office build-ing *and their visitors* is a carrier of passengers for hire," not only as to the tenants, but also as to their visitors. True, such proprietor is not a common carrier in the sense that he was bound to carry all who might apply for transportation. Nevertheless, as stated by a learned text-writer:

"With reference to the safety of their passengers, the law has imposed upon the proprietors of passenger elevators duties precisely similar to those exacted of passenger carriers by railroad. The safety and lives of those who avail them-selves of this means of carriage must of necessity be in-trusted in a great measure to the care of those who control and operate the cars. The law, therefore, justly holds that, while the owners of passenger elevators are not insurers of the safety of their passengers, they are bound to exercise in their behalf the highest degree of skill and foresight, or, as some courts have expressed it, the utmost human care and foresight consistent with the efficient use and operation of the means of conveyance employed." 1 Hutch. Carriers (3d ed.) § 100, citing numerous cases, including two from this court as mentioned in the opinion on file.

See, also, *Kentucky H. Co. v. Camp,* 97 Ky. 424, 30 S. W. 1010; *Miller v. Fitz Gerald D. G. Co.* 62 Neb. 270, 86 N. W. 1078; *Totten v. Phipps,* 52 N. Y. 354; *Cooley v. Cum-mings,* 49 Hun, 608, 1 N. Y. Supp. 631; *Krey v. Schlussner,* 62 Hun, 620, 16 N. Y. Supp. 695; *Mitchell v. Keene,* 87 Hun, 266, 33 N. Y. Supp. 1045; *Mitchell v. Marker,* 62 Fed. 139, 10 C. C. A. 306, 25 L. R. A. 33; *Springer v. Byram,* 137 Ind. 15, 36 N. E. 361, 23 L. R. A. 244.

This last case is as favorable to the defendant as any found. It was there held that "evidence that a newsboy had previously been refused permission to ride in an elevator is permissible in an action by him for injuries received on such elevator, claiming the rights of a passenger, where the rules of the establishment *excluded* newsboys from the elevator." Undoubtedly the proprietor of an elevator, as well as any other carrier, may adopt reasonable regulations as to the ad-

Ferguson v. Truax, 132 Wis. 478.

mission of persons into his elevator. Such regulations should ordinarily be general and impartial and not arbitrary. 2 Hutch. Carriers (3d ed.) § 943. But from the very nature of things, as stated by the same authority, such proprietor "may refuse to accept persons offering themselves as passengers who are unfit to be carried, either because such persons from bad character, from being afflicted by contagious disease, from apprehended evil designs either upon the carrier himself or his passengers, or from drunkenness or insanity, would be unfit associates for them or unsafe for the carrier, or if any person refuses to pay his fare, or to submit to the reasonable regulations of the carrier, or if his purpose in seeking a passage is to interfere with or injure the business of the proprietors of the conveyance, or to make an assault upon another passenger, or if there be no room for him, or even if the carrying of the person offering himself as a passenger would probably excite popular violence and expose him to great personal danger at the destination to which he desired to be carried, the carrier may refuse to carry such person." 2 Hutch. Carriers (3d ed.) §§ 966–970.

The question recurs whether the conduct of the plaintiff a short time prior to the injury was such as to furnish reasonable ground for excluding him from the elevator. If he was guilty of such misconduct, and in consequence thereof was permanently prohibited from riding in the elevator thereafter, and, in violation of such injunction, was in the elevator at the time of the accident, then he did not have the rights of a passenger, even if he was at the time on his way to Dr. Thompson's office. To make such prohibition effectual it was unnecessary to repeat it every time the plaintiff came around the building. The questions thus presented were questions of fact determinable by a jury. On the trial in this case they were not submitted to the jury. In fact they were taken from the jury. As indicated in the opinion filed, the court charged the jury to the effect that the question whether the plaintiff was a passenger on the elevator when it fell turned upon whether he was at the time on his way to the

office of Dr. Thompson or "engaged in riding up and down on the elevator as pastime." This precluded the jury from considering whether the plaintiff's alleged misconduct was such as to bar him from being a passenger at the time. The defendant excepted to the first portion of such charge, and after careful consideration we are constrained to hold that it was error.

*By the Court.*—The judgment of the superior court of Douglas county is reversed, and the cause is remanded for a new trial.

SIEBECKER, J., dissents.