FERGUSON, by guardian *ad litem,* Respondent, vs. TRUAX, imp., Appellant.

*October 22—November 10, 1908.*

*Evidence: Experts: Hypothetical questions: Impeachment of witness: Carriers: Negligence: Personal injury: Fall of passenger elevator: Special verdict: Degree of care required of owner: Instructions to jury: Questions for jury: Improper remarks of counsel: Damages.*

1. Hypothetical questions to expert witnesses should be such that the jury can distinctly understand the exact facts upon which the witnesses base their opinions. That rule was violated in this case by questions to medical experts in which was assumed the truth of complicated, voluminous, and conflicting evidence.
2. Testimony that an expert witness had, prior to the trial, intimated in certain conversations that if he were paid for his time and expenses by either party he would, if necessary, testify falsely for such party, was not competent to impeach such witness until foundation had been laid therefor by asking the witness specifically whether he had made such a statement, specifying details and calling attention to time, place, and occasion.
3. In an action for injuries sustained by a boy through the fall of a passenger elevator in an office building, the issue as to whether he was riding in the elevator for mere pastime or for the purpose of going to a doctor's office to ascertain if the doctor had work for him, is *held,* in the light of the facts and circumstances, to have been sufficiently submitted to the jury by the question in the special verdict, "Was the plaintiff at the time of the accident on his way to Dr. T.'s office to visit the doctor?"
4. The owner of an office building, maintaining therein a passenger elevator, is bound to exercise in keeping such elevator in a safe condition the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances. An instruction stating the standard to be "such care as a *very* prudent and skilful man would ordinarily use in a similar case," etc., is *held* erroneous.
5. Whether in this case defendant had failed to use the required degree of care to keep the elevator in a safe condition, and whether a want of ordinary care on plaintiff's part contributed to produce his injuries, are *held* to have been questions for the jury.

6. Although plaintiff's own testimony at the different trials and on a prior examination was contradictory and conflicting on the questions whether he was riding in the elevator for amusement or was on his way to a doctor's office and whether he had been forbidden by defendant's agents to ride in the elevator, yet since it was not obviously false in the light of reason and common knowledge or because contradicted by well known physical facts, its weight and credibility were to be determined by the jury in connection with the testimony of other witnesses.

7. Remarks by plaintiff's counsel to the jury as to a witness for defendant having been induced by money to testify falsely, and as to other matters, are *held* unwarranted by the evidence and prejudicial as tending to inflame the minds of the jury.

8. Whether the amount of damages found by the jury in this case was excessive is not determined; but MARSHALL, J., is of the opinion that, upon evidence substantially the same as that given upon the two trials already had, damages in excess of $8,000 could not be approved.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

The issues involved in the case, the facts respecting the location of the elevator in defendant's building, its construction, manner of operation, its use by the occupants of the building as tenants of the defendant, and the facts bearing on defendant's neglect to keep the elevator in a reasonably safe condition for carrying passengers are stated in detail in the report of the case on the former appeal (132 Wis. 478, 110 N. W. 395, 111 N. W. 657, 112 N. W. 513), and need not be restated here. It appears that the plaintiff, the elevator boy, Louis Larson, and Claude Luse, occupied the elevator as it started on its upward trip; that it did not stop at any of the floors on its upward trip; that it ran against the shive timber, breaking parts of it; and that it became detached from the cable and dropped to the bottom of the elevator shaft with these three occupants. Plaintiff testified that he did not know what occurred thereafter until he was assisted from the elevator at the bottom of the shaft. He testified that he entered the elevator on this trip to go to Dr. Thompson's offices in the building for the purpose of ascertaining whether

the doctor had anything for him to do, and that he had prior to this day been at Dr. Thompson's offices, had done some errands for him, and that he had been asked by the doctor to call every morning to do work for him. He also testified that he has suffered much pain since the accident and injury and that his strength and health have been much impaired. Dr. Sazarin, plaintiff's attending physician, testified that he saw the plaintiff within a short time after he had been taken to his father's home, made an examination, and found him very weak and afflicted with a partial suspension of his bodily functions; that Dr. Adams was called to his assistance; that they administered an anæsthetic, thoroughly examined plaintiff, and found he had been injured in the chest and region of the spine (fully described in the former appeal at 132 Wis. 493, 110 N. W. 395, 111 N. W. 657, 112 N. W. 513).

The case was submitted to the jury by special verdict and they found: (1) That the defendant, *Truax,* had failed to use the highest practicable degree of care to keep the elevator in an ordinarily safe condition for carrying passengers; (2) that the want of such care was the proximate cause of plaintiff's injuries; (3) that plaintiff at the time of accident was on his way to Dr. Thompson's office to visit the doctor; (4) that plaintiff had not been prohibited by any of *Truax's* agents from riding in the elevator; (5) that no want of ordinary care on plaintiff's part contributed to produce his injuries; (6) the sum which would compensate plaintiff for the damages sustained by him on account of his injuries. The court awarded judgment for plaintiff for the amount assessed by the jury and costs. This is an appeal from such judgment.

For the appellant there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.*

For the respondent there was a brief by *Ross & Dwyer,* and oral argument by *F. H. Ross* and *W. D. Dwyer.*

SIEBECKER, J.    1. The appellant urges that the hypothetical questions propounded to four doctors respecting the cause of plaintiff's present condition of health and the progressive character and permanency of his illness, besides assuming certain specific facts, embraced an assumption that the plaintiff's evidence as to his height, weight, nervous condition, pain, the suffering endured by him up to the time of the trial, and his ability and inability to work was true. From an examination of the record it appears that the evidence of the plaintiff was conflicting and contradictory upon the subjects covered by the hypothetical questions as to his nervous condition, the amount of pain and suffering he had endured, and his ability to work. In some of the questions the truth of like evidence of the father of plaintiff and of the evidence of Drs. Sazarin and Adams bearing on his condition and health was assumed. The doctors to whom these questions were propounded had attended the trial and heard the evidence of plaintiff, his father, and the doctors upon the subjects included in the hypothetical questions. The evidence on these subjects is so complicated and voluminous that a difference in understanding the material facts is so probable as to raise doubts as to what facts were considered as true when these experts gave their opinions. These conditions render it well-nigh impossible to ascertain upon what facts the experts based their opinions. Such a state of the case renders the opinions given uncertain and unreliable, and likely resulted to the great prejudice of the party against whom it operated. As was declared in *Bennett v. State,* 57 Wis. 69, 14 N. W. 912: "The jury should in every case distinctly understand what are the exact facts upon which the expert bases his opinion." This and other cases in this court clearly point out the necessity of stating the facts in the hypothesis in this class of cases, and show that a failure so to do is prejudicial. *Cornell v. State,* 104 Wis. 527, 80 N. W. 745, and cases there collected.

2. The deposition of the witness Irwin was offered and received to impeach Dr. Thompson.   It appears from this deposition that conversations had been held between them as to Dr. Thompson being a witness for the plaintiff on the trial of this case.   Irwin states, in effect, that Dr. Thompson intimated to him in these conversations that if he were paid for his time and expenses by either party he would, if necessary, testify falsely for such party.   To make this evidence competent as impeaching evidence it devolved on plaintiff to lay the foundation by asking Dr. Thompson specifically whether he had made such a statement, specifying the details and calling attention to the time, place,.and occasion, and, if the doctor denied having had such a conversation or failed to answer the inquiry, then Irwin's testimony of them would be admissible for impeachment.   This foundation was not laid, and Irwin's evidence was erroneously received for the purpose of impeachment.   *Dufresne v. Weise,* 46 Wis. 290, 1 N. W. 59; *Stone v. N. W. S. Co.* 70 Wis. 585, 36 N. W. 248; *Hunter v. Gibbs,* 79 Wis. 70, 48 N. W. 257.   Respondent's counsel insists that Irwin's deposition as to these conversations was properly admitted as impeaching evidence under a stipulation made before the trial, and relies upon letters between him and appellant's counsel containing such a stipulation.   This claim is not conceded by counsel for appellant, and counsel have presented nothing in the record sustaining this claim, nor has examination of the record disclosed anything to support it.   Under these circumstances we cannot assume that such a stipulation exists.

3. Upon the issue of whether or not the plaintiff at the time of accident was riding in the elevator for pastime or amusement, or for the purpose of going to Dr. Thompson's office to ascertain if the doctor had any work for him, the court submitted the following question: "Was the plaintiff at the time of the accident on his way to Dr. Thompson's office to visit the doctor?"   The court refused to submit the fol-

lowing additional question requested by appellant: "Had Dr. Thompson, prior to the accident, invited plaintiff to come to his office?" No instructions were given to the jury upon the question so submitted to them. It is argued that an affirmative answer to the question submitted in no way informs the court whether the jury found that plaintiff took the elevator to go to Dr. Thompson's office for the purpose of rendering services for the doctor or merely did so for his amusement and pastime. The question and answer must be considered in the light of the facts and circumstances of the case. Plaintiff testified that he went to the doctor's offices, pursuant to a previous arrangement, to ascertain if the doctor wanted some service rendered. The defendant denies that any such arrangement existed, and asserts that plaintiff theretofore had rendered no services for the doctor. From the evidence it is apparent that the jury must have arrived at one of two alternatives—either that plaintiff was on his way to the doctor's offices in response to his invitation, or that he was not on his way to the doctor's offices, but was merely riding in the elevator for his pastime or amusement. Under these circumstances the finding is sufficiently definite and clear to establish the fact that the jury found that plaintiff took the elevator to go to the doctor's offices for the purpose testified to by him, and that the visit was not a mere pretense for riding in the elevator for his pastime and amusement.

4. Exception is taken to the instruction defining the degree of care imposed on defendant to keep the elevator in an ordinarily safe condition for carrying passengers. The court instructed the jury:

"By the 'highest practicable degree' of care is meant such care as a very prudent and skilful man would ordinarily use in a similar case under the same or similar circumstances."

On the former appeal of the case (132 Wis. 478, 490, 110 N. W. 399) the court referred to the case of *Oberndorfer v. Pabst*, 100 Wis. 505, 76 N. W. 338, as declaring that: .

"It is the duty of the proprietor of an office building to see that the passenger elevators operated by him therein are properly and safely constructed, and that they are operated with the highest degree of skill and care commensurate with or proportionate to the possibility of injury to passengers using them."

It is also stated in the opinion on the former appeal in this case that the standard of care respecting safety in the operation of passenger elevators is the same as that exacted of passenger carriers by railroad. As to the standard of care demanded of the latter, the following taken from Fetter on Carriers was approved as expressing the rule on the subject:

"For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business." 1 Fetter, Carriers, § 8.

Expressing the elements of this rule in other terms, it imposes on carriers of passengers the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances. The instruction given by the court imposes as the standard of care that which is ordinarily exercised by the *very* prudent and skilful man. The instruction embraces the elements of similar circumstances and usual conduct of a class of men, but imposes the standard of care which is exercised by the very prudent and skilful class of men instead of the ordinarily prudent and skilful class of men. This exacts a higher degree of care of defendant in operating this elevator than the law imposes. Reliance is placed on the language used in *Wanzer v. Chippewa Valley E. R. Co.* 108 Wis. 319, 84 N. W. 423, wherein the special verdict and the charge are criticised as imposing a wrong standard of care on carriers of passengers. It is urged that the charge and special verdict in the instant case

are in effect the same as in that case and therefore erroneous. The criticism of the charge and the verdict in the *Wanzer Case* does not specifically point out what language there employed in defining the standard of care involved in the case was held misleading to the jury, and the grounds of criticism are therefore somewhat obscure. It is, however, manifest that the court adopted and approved the standard of care imposed on carriers of passengers as embodied in the quotation above taken from 1 Fetter on Carriers of Passengers, § 8.

The respondent contends that this erroneous instruction was not prejudicial because the court should have held as matter of law that defendant was negligent as found by the jury. We cannot approve this contention under the facts and circumstances of the case, nor do we find justification in the record for defendant's claim that there is no credible evidence showing negligence. The facts and circumstances material to this question are such that the jury might well have drawn different inferences respecting defendant's care in keeping the elevator in an ordinarily safe condition for carrying passengers, and the question was properly submitted to the jury for determination. *Ferguson v. Truax,* 132 Wis. 478, 488, 110 N. W. 395, 111 N. W. 657, 112 N. W. 513.

5. Appellant contends that the verdict covering the litigated questions whether or not plaintiff at the time of accident was on his way to visit Dr. Thompson at his office, and whether or not he had prior thereto been forbidden by defendant's agents to ride in the elevator, is not supported by the evidence. It is conceded that plaintiff testified to facts tending to support these findings, but his testimony upon the different trials and the preliminary examination is vigorously assailed as of no weight and credibility because of its many contradictions and conflicts upon many material phases of the case. We need not specify these alleged conflicts and contradictions. It is manifest that they exist. The appellant's contention is, in substance, that plaintiff's evidence is

removed out of the field of credibility upon the ground that its weight and credibility are destroyed by its contradictions and conflicts, and because his evidence is impeached by the evidence of other witnesses.    This claim is not of that class wherein the evidence of a party is obviously false in the light of reason and common knowledge and because it is contradicted by well known physical facts.    The credibility of plaintiff's evidence must be determined by the weight and credibility of the conflicts and contradictory statements of the plaintiff and the other witnesses in the case.    The inquiries thus presented embrace many ingredients dependent upon the evidence of the plaintiff and the respective witnesses and the weight of their testimony upon the subjects involved. Determination of these questions is peculiarly within the province of the jury as the tribunal to which is committed the trial of the facts.    We are of opinion that the court properly submitted the issues covered by questions 3 and 4 to the jury for determination.    We are also satisfied that the question of contributory negligence on the part of plaintiff was properly a question for the determination of the jury.

6. Complaint is made on account of remarks made by plaintiff's counsel to the jury to the effect that Dr. Thompson had been induced to testify falsely in consideration of money paid him by the defendant, and another statement by counsel that Dr. Sazarin had testified that plaintiff's hands were not burned by contact with the elevator hand cable when the elevator fell.    The facts of the case furnish no justification for such remarks.    These, as well as other remarks which the trial court condemned in its ruling, show that counsel transgressed the proper limits in presenting the case to the jury. In the very nature of the case they would tend to inflame the minds of the jury and tend to arouse them to action controlled by prejudice, to the injury of the defendant.

Upon consideration of the foregoing assignments of error it necessarily follows that the verdict and judgment cannot

stand and that a new trial must be granted. We need not consider other questions raised and argued.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.

The following statement was added to the opinion December 4, 1908:

PER CURIAM. In view of the fact that it was necessary to order a new trial of the case for errors committed on the trial, this court deemed it advisable not to consider the question of whether or not the amount of damages found by the jury was excessive, and therefore that question was not decided, though an exception thereto was presented and fully argued on this appeal of the case.

MARSHALL, J. *(concurring)*. This case has now passed in review twice before this court. It has been pending a long time. In the very nature of things the litigation will be extremely burdensome to both sides before the rights of the parties can be finally established. For that reason it seems to the writer, every question now before us which will be material upon another trial should be met, to the end that, so far as possible, the way may be cleared for a final determination of the controversy.

Upon the first appeal the finding in favor of plaintiff of $8,000 was challenged as excessive. That challenge was not resolved in plaintiff's favor without considerable difficulty. Enough was said in the opinion to indicate that the amount was well up to the limit of what could receive judicial approval. It could not have been justified except upon the theory that plaintiff, as the jury were permitted to find from the evidence, was permanently and well-nigh completely disabled. Facing that situation the court remarked that while the recovery was not so clearly excessive as to require con-

demnation, it "was very large." That language was used, as
the writer understood, as a suggestion which the trial court
might refer to in reviewing a second verdict. The nature of
the case was such that it did not seem probable that any ad-
ditional evidence could or would be produced indicating a
worse state of things than was testified to upon the first trial.
As I view the evidence in the second record it is substantially
the same as the first. If it could be well said that there is
more evidence now than before as to the disability it only
goes to support, or rather furnish a stronger justification
than before for, a finding that the plaintiff was permanently
injured to an extent substantially wholly disabling him.
When a finding is based upon such a theory no justification
can be created for a large increase in the recovery by produc-
ing additional evidence in support of it. So if the former
recovery was on the border line between the reasonable and
unreasonable, the second finding increasing the amount of
the recovery from $8,000 to $12,000 should, as it seems, be
unhesitatingly condemned.

It is not infrequent that upon a judgment, in a case of this
sort, for damages well-nigh great enough to shock the sense
of what is just, being reversed and a new trial had with sub-
stantially the same evidence, the amount is greatly increased;
the circumstances strongly suggesting a penalizing of de-
fendant for vindicating his right to the reversal, leading nec-
essarily to an imposition upon plaintiff of an additional bur-
den as a consequence of the vindication to establish his
rights, which burden could not legitimately be cast upon the
defendant to any greater extent than the taxable costs of the
additional proceedings.

It is most unfortunate that under our system for remedy-
ing wrongs of the nature of the one in question the realizable
indemnity to the injured party is often small as compared
with the amount which the defendant is compelled to pay,
but the defect in the system is not one attributable to defend-

ants and should not be cast upon them by any notion of equity which, without legal warrant, aims to add to the pecuniary loss suffered by a plaintiff from the injury itself, an amount sufficient to make good to him not only such pecuniary loss but the burden of vindicating his rights, in addition to the taxable costs. It were better if that burden could be in ᐧ me way very much lightened, but the method must be provided by the legislature, not by casting such burden upon the defendant through illegitimate administration.

The court at this time has seen fit not to deal at all with the question of whether the verdict is excessive or not, though it is raised and has been fully argued. In the light of the result on the first appeal it is the law of the case, as I view it, that a recovery of $8,000 on a case such as that made on such appeal "is very large." I take that as meaning, substantially, that such amount would be up to the limit of what could be justified. So it seems to me that it would be well to lay down upon this appeal, as has been done on other occasions, to the end that justice may be attained as speedily as possible and with as little burden to the parties as practicable, that if plaintiff recovers upon evidence substantially the same as has been twice produced, damages in excess of $8,000 cannot be approved.