Ormond v. Wisconsin Power & Light Co. 194 Wis. 305.

———————

ORMOND, by guardian *ad litem,* Respondent, vs. WISCONSIN POWER & LIGHT COMPANY, Appellant.

*November 7—December 6, 1927.*

*Carriers: Bus companies: Degree of care required toward passengers: Examination of tires on busses: Sufficiency: Liability in case of blowout.*

1. A common carrier is required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight for the safety of its passengers, in view of the mode and character of the conveyance adopted, and consistent with the practical operation of its business.   p. 307.
2. Whether the conduct of a common carrier in a given particular accords with its legal duty in the premises is to be tested by comparing it with that generally exercised by those engaged in the same business under the same or similar circumstances. p. 308.
3. A carrier is not an insurer of the safety of its passengers, but is liable only for ordinary negligence, which means simply a want of ordinary care.   p. 308.
4. A transportation company which had the tires of one of its busses inspected by having a representative of a tire company carefully feel them outside and by injecting the proper amount of air is *held* to have exercised ordinary care, absolving it from negligence in the injury of a passenger consequent on a tire blowing out, since such inspection was the customary inspection of tires made generally by bus companies throughout the country.   p. 310.

APPEAL from a judgment of the county court of Columbia county: A. F. KELLOGG, Judge.   *Reversed.*

This is an action by *Gladys Ormond* to recover damages for personal injuries sustained by her while a passenger in

one of defendant's busses. From a judgment in favor of the plaintiff defendant appeals.

Plaintiff was a passenger in one of defendant's busses going from Madison to Portage. She occupied a seat over the right rear wheel. As they entered the village of Poynette, and while the bus was traveling at a rate of four or five miles per hour, the tire of the wheel over which she was seated blew out with such force that it punctured the housing of the wheel and caused her personal injuries. The negligence charged against defendant is a failure to properly inspect the tire before leaving on the trip. The bus was equipped with General cord tires. Before leaving on the trip the bus was submitted to the Monona Tire Company, which deals in General cord tires, at Madison, for an inspection of the tires. A representative of the company inspected the tires, in the manner in which that company inspected all bus tires, namely, by carefully feeling outside thereof for the purpose of detecting holes or other defects that could be detected by the sense of sight or touch and by injecting the proper amount of air. The tires were pronounced O. K. An inspection of the tire after the blowout indicated that there was a separation of the thread from the fabric part or carcass of the tire, at which point friction had worn the fabric until it had become too thin to resist the pressure of the air. There is evidence tending to show that it was possible to discover such a defect in the tire by the inspection made, but that such a defect was more certain of discovery if the tire were deflated, and a still more reliable inspection could be made by deflation and removal of the tire from the wheel. The evidence also showed that the inspection made was such as is made not only by bus companies running out of Madison but by bus companies generally throughout the United States. There was no evidence that any bus company anywhere in the country made an inspection of their tires requiring either their deflation or removal from the wheels.

The jury found a want of ordinary care on the part of the defendant in furnishing the conveyance in question; that the equipment was defective, which defective condition existed for a sufficient length of time to have enabled the defendant to discover the same by the exercise of ordinary care, all of which constituted a proximate cause of the accident. Upon this verdict judgment was rendered in favor of the plaintiff.

For the appellant there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison, and oral argument by *William Ryan.*

For the respondent there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *W. H. Farnsworth.*

OWEN, J. Although the verdict is framed in general terms, the only want of ordinary care on the part of the defendant which the evidence tends to support is its failure to make a more rigid inspection of the tires before permitting the bus to start on the trip, and we regard the sole question to be considered to be whether the jury was warranted in so finding.

The duty which a common carrier owes to a passenger is subject to various statements in the books imposing different degrees of care upon the common carrier, all of which require, however, a very high degree of care. (See the subject of Carriers in Century Digest, § 1087.) The rule which prevails in this state was deliberately framed and stated in *Ferguson v. Truax,* 136 Wis. 637, 643, 118 N. W. 251, as follows:

"For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business."

This rule has been strictly adhered to in *Merton v. Mich. Cent. R. Co.* 150 Wis. 540, 137 N. W. 767; *Anderson v.*

*Yellow Cab Co.* 179 Wis. 300, 191 N. W. 748; *Carson v. Green Cab Co.* 186 Wis. 566, 203 N. W. 394. In *Ferguson v. Truax,* 136 Wis. 637, at p. 643 (118 N. W. 251), commenting on the rule, the court said:

"Expressing the elements of this rule in other terms, it imposes on carriers of passengers the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances."

Whether the conduct of the common carrier in a given particular accords with its legal duty in the premises is to be tested by comparing its conduct with that generally exercised by those engaged in the same business under the same or similar circumstances. It is to be tested by the same rules which are applied to ordinary care. In fact, the care which the rule prevailing here imposes upon common carriers falls within the class of ordinary care, and their failure to observe that care amounts to ordinary negligence under our classification of negligence. To be true, the care exacted of the common carrier is a high degree of care. To constitute ordinary care it must be the "highest degree of care reasonably to be expected from human vigilance and foresight." It is but the application of the doctrine that "the standard of duty should be according to the consequences that may ensue from carelessness." *Indianapolis & St. L. R. Co. v. Horst,* 93 U. S. 291, at p. 296. The carrier is not an insurer of the safety of its passengers. It is liable to them only for ordinary negligence, which means simply a want of ordinary care, as that term is measured with reference to the duty of common carriers. Speaking of the duty owing from master to servant, in *Innes v. Milwaukee,* 96 Wis. 170, 174, 70 N. W. 1064, the court said:

"When a person is charged with such negligence, and it is shown that his conduct came up to the standard of persons generally, in the same business, under the same circumstances, neither jury nor court has a right to say that such

way is a negligent way from any legal standpoint. The
master cannot be held responsible for not adopting the best·
way. It is sufficient if he takes the ordinary way. This rule
is universal in its application to the relation of master and·
servant, unless such ordinary way be obviously dangerous."
(Citing many authorities.)

And in *Jensen v. Wis. Cent. R. Co.* 145 Wis. 326, 335,
128 N. W. 982, the court said:

"The proper standard of defendant's duty was the care
which the great mass of mankind ordinarily exercise under
the same or similar circumstances. Now and then it appears
that the customary way of doing things is utterly disregard-
ful of personal safety, where it is said, the mere fact that
the way adopted was the customary way, is not a defense
against the claim of liability. They are very extreme cases,
quite different from one where men of judgment and ex-
perience commonly for a long time have been accustomed to
arrange premises and instrumentalities for an ordinary busi-
ness enterprise like a railroad, in a particular way, found by
experience to be reasonably safe and convenient."

It is difficult to see why that rule does not apply to the
instant case. Even though the relations here existing were
that of carrier and passenger rather than that of master and
servant, nevertheless we are dealing with a question of negli-
gence, and the conduct charged as negligent must be com-
pared with that ordinarily exercised by the great mass of
mankind under the same or similar circumstances. This rule
was specifically applied to the duty of a common carrier in
*Merton v. Mich. Cent. R. Co.* 150 Wis. 540, 137 N. W. 767,
In *Grand Rapids & I. R. Co. v. Huntley,* 38 Mich. 537, at
p. 546, speaking of the duty which a railroad company owed
to a passenger, the court said:

"If they exercise their functions in the same way with
prudent railway companies generally, and furnish their road
and run it in the customary manner which is generally found
and believed to be safe and prudent, they do all that is in-
cumbent upon them."

This language was cited with approval in *Rathbone v. Detroit U. Ry.* 187 Mich. 586, at p. 600, (154 N. W. 143). Such is said to be the tendency of modern English decisions, in 3 Thompson, Comm. on Neg. § 2748. We see no escape from the conclusion that the customary inspection of tires made generally by bus companies throughout the country constituted the standard of care required of the defendant, unless it can be said that such an inspection "is utterly disregardful of personal safety." This we cannot say. There are millions of motor vehicles in use throughout the country. Blowouts are not uncommon. Serious consequences are exceedingly rare. The ordinary owner or operator of a motor vehicle does not commonly have an inspection of tires. We do not know that the consequence resulting from a blowout of a bus tire is more serious than that of an ordinary tire vehicle. At any rate, common knowledge does not affirmatively establish that fact. Furthermore, the inspection here made constituted a degree of care greater than that commonly exercised by the ordinary owner of motor vehicles.

The conclusion here reached in no manner conflicts with *Dibbert v. Metropolitan Inv. Co.* 158 Wis. 69, 147 N. W. 3. In that case settled law imposed certain duties upon the owner of the elevator. The decisions are in conflict with reference to the particular duty of the carrier there under consideration. The duty devolving upon the common carrier, however, was one prescribed by law, no matter which line of decisions was followed. It was like the duty imposed upon the traveler upon the highway to look before crossing a railroad track. That is a duty which the law imposes upon him, and it is a duty which he must perform no matter what the conduct of mankind generally may be under the same or similar circumstances.

We conclude that the jury had no evidence before it permitting it to find that the care here exercised by the defendant, meeting as it did "the standard of persons generally, in

the same business, under the same circumstances," constituted a want of ordinary care. It follows, therefore, that the complaint of the plaintiff should be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the plaintiff's complaint.