| State | Citation | Source |
|---|---|---|
| Washington | secs. 13, 14, art. IV | Revised Code of Washington, 1963 Supp. |
| Wyoming | sec. 17, art. 5 | Wyoming Stats. 1957 |

BRADFORD, Respondent, v. MILWAUKEE & SUBURBAN TRANSPORT COMPANY, Appellant.

*September 1—October 6, 1964.*

For the appellant there were briefs by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* of counsel, and oral argument by *John M. Swietlik,* all of Milwaukee.

For the respondent there was a brief by *James Buchbinder,* attorney, and *Burton A. Strnad* of counsel, both of Milwaukee, and oral argument by *Mr. Strnad.*

HALLOWS, J. The defendant argues the evidence does not support the verdict on the issue of negligence and the wage-loss award was beyond reason and without any evidentiary foundation. It is also contended the permanent-injury award was grossly excessive. The plaintiff has taken a review and argues the case should have been submitted to the jury on the question of whether there was a violation of the safe-place statute in addition to common-law negligence applicable to public buses.

We consider there is credible evidence to sustain the jury finding of negligence on the part of the defendant. The plaintiff was a resident of the city of Milwaukee who ordinarily drove to work, but on the morning of February 11, 1960, her car was snowbound because of 16.7-inch snowfall the preceding day. She boarded a bus near her home on the northwest side of Milwaukee and about 7:39 transferred to a bus at the corner of Twenty-Seventh and Wells streets to go east. The plaintiff was wearing a coat, scarf, and snow boots with a combination sole and heel and was carrying a purse and a flat package.

When the bus reached Jackson street some distance from where she got on the bus and about twenty minutes later, she walked to the front exit. Other persons preceded her in leaving the bus. As she arrived at the edge of the platform there was a lady on the step below. When the lady

took a step down the plaintiff put her right foot onto the second step. When the person in front of her took another step down the plaintiff placed her left foot on the second step and then both of her feet went out from beneath her and she fell, landing on her buttocks. She was helped out of the bus by a man awaiting to board it. After a short conversation the bus driver helped her back into the bus where she gave him her name. As the plaintiff was getting off the bus for the second time she noticed the steps and testified there was frozen snow an inch thick on them and she saw no sand thereon. The plaintiff testified there was ice on the steps the first time she alighted from the bus although she did not see it. This was concluded from the fact the steps felt slippery both times.

The bus remained stopped with its door open for some ten-fifteen minutes. The temperature was below freezing. This trip was the second of the morning for the bus. It was testified the driver before commencing the run from its western end had sanded the steps and cleaned them off with a brush. He noticed as he traveled east the steps were becoming slushy and wet because of the tracking in of snow by the people getting on the bus, but he saw no ice. At all times the bus driver was in a position to see the condition of the steps. The bus was equipped with a defroster and heater in front of the bus, both of which directed some heat toward the front steps which were made of flat hard rubber with ridges in it.

The jury accepted the plaintiff's version that there was ice or frozen snow on the steps which caused her to slip and not the appellant's version that there was no ice on the steps at the time the plaintiff fell and any frozen snow which was on the steps when she got off the second time became frozen while the bus door remained open for ten to fifteen minutes.

The defendant contends this case is controlled by *Ennis v. Milwaukee E. R. & L. Co.* (1930), 202 Wis. 277, 232

N. W. 540, while the plaintiff relies on *Rieschl v. Wisconsin Michigan Power Co.* (1940), 236 Wis. 116, 294 N. W. 521, which distinguished the *Ennis Case*. One of the issues in the *Ennis Case* was the length of time the ice existed on an outside step of a streetcar. There was no evidence the icy condition of the exterior step of the streetcar existed a sufficient length of time for the operator in the exercise of the proper care to have corrected it. The outside steps were not regularly visible to the operator of the streetcar. In *Rieschl,* as here, there was ice on the inside step of a bus. There, as here, there was no evidence of how long the ice existed before the passenger slipped thereon. In both cases the operator of the bus could see the steps at all times. The jury could draw the inference that in the exercise of the care required of the operator of the bus he ought to have known of the slippery condition in time to have prevented the injury.

The driver in the instant case testified he observed what he described as an accumulation of slush both at Twenty-Seventh and Thirty-Fifth streets while traveling east on Wells street. At no time after the bus left the west end of the run did the driver clean or sand these steps until he reached the east end after the plaintiff had fallen. There is no doubt the operator of the bus expected a slippery condition but also saw evidence of it on the steps. After the plaintiff fell the frozen snow was called to the driver's attention, and he merely stated, "You got to expect that in this kind of weather."

While a certain amount of snow and slush is to be expected in the entrance of a bus on a winter day when the streets and sidewalks are covered with snow, we cannot hold as urged by the defendant that the duty of the bus driver was fulfilled by only sweeping these steps off and sanding them at the end of a run. The accumulation of snow or slush on the steps forming ice renders the steps or is likely

to render the steps of the bus slippery and thus unsafe during the run. A bus driver need not sweep and sand the steps at every stop but he does have a duty to ascertain and keep the bus entrances in a reasonably safe condition at all times and the effort to fulfil this duty increases in inclement weather. This is not an impractical or an unreasonable requirement.

The prevailing rule of the duty of a common carrier is stated in *Ferguson v. Truax* in 1908, 136 Wis. 637, 643, 118 N. W. 251, by quoting 1 Fetter, Carriers of Passengers, p. 13, sec. 8, as follows:

" 'For the safety of their passengers, common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business.' "

In commenting on this text the court stated, "Expressing the elements of this rule in other terms, it imposes on carriers of passengers the highest degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of such business under the same or similar circumstances." This rule was approved and explained in *Ormond v. Wisconsin Power & Light Co.* (1927), 194 Wis. 305, 216 N. W. 489, and as late as *United States F. & G. Co. v. Milwaukee & S. T. Corp.* (1962), 18 Wis. (2d) 1, 117 N. W. (2d) 708, this court approved the above-quoted language as a proper instruction to the jury. This expression of a rule of ordinary negligence is applied not to the usual duties of the general public but to the usual and normal duties of common carriers, which because of the nature of their business involve the higher degree of care.

Under this test of the common carrier's duty we must affirm the jury's finding of negligence. Because of the affirmance of this issue, it is not necessary to discuss the plaintiff's question raised on review that the case should

have been submitted to the jury on the question of whether the safe-place statute also applied.

The defendant contends the amount of damages for the permanent injury is grossly excessive and for loss of wages to the date of trial is not supported by the evidence. No question is raised on the amount awarded for pain and suffering or medical expenses. The plaintiff received a linear fracture of the sacrum bone which healed normally. She discontinued treatment in November of 1960. Pain persisted, however, and her back gave her trouble. Dr. Gaenslen testified the plaintiff suffered a disability rated at three percent of the body. There was testimony the injury aggravated an arthritic condition and plaintiff would suffer from some pain in the future.

The plaintiff at the time of the injury was employed by Breithaupt Printing Company. While the evidence is somewhat confusing as to loss of work, it is at least that the plaintiff lost because of the accident 597½ hours in 1960 amounting to $866.38, 83 hours in 1961 at a pay-scale rate resulting in the loss of $124.50, and in 1960 to the time of her retirement 49½ hours or $76.72. The plaintiff testified she retired due to her inability to continue work. In June of 1962 she retired, went on social security but told her employer she would be available for work on a part-time basis and would work when needed. Upon retirement she made no claim for disability pension under social security. After retirement she did in fact work some 96 hours in 1962. It is quite obvious the award of $5,896 included almost a 100 percent loss of wages for work lost after the plaintiff retired and up to the time of trial although she was only three percent disabled and approximately sixty-four years of age. We believe this award to be excessive and cannot be sustained by the evidence. No medical testimony exists that her entire loss of wages after retirement or retirement itself was caused by the accident.

However, the award of $4,500 for permanent injury is within the reasonable bounds of the evidence. The court instructed the jury to consider in determining this item the future loss of wages, impairment of health, future pain and suffering, and other elements. Considering these various elements *in toto,* we cannot say an overall allowance of $4,500 is so excessive that it ought to be set aside as being unsupported by the evidence.

In respect to the award for loss of wages we consider this is a proper case in which to apply the *Powers* rule (*Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393), as the verdict had the approval of the trial court. In our opinion the evidence for loss of wages did not exceed $3,000. As the defendant is entitled to a new trial on the issue of damages, we grant the option to the plaintiff to reduce the verdict by the sum of $2,896 and to accept judgment based on said modified verdict.

*By the Court.*—The judgment is reversed, and a new trial granted unless the plaintiff exercises the option within twenty days from the date this record is remitted to the trial court to reduce the verdict by the sum of $2,896 and to accept judgment based on said modified verdict; the defendant to have costs on this appeal.

GORDON, J., took no part.