INSURANCE COMPANY OF NORTH AMERICA, Appellant, v.
KRIECK FURRIERS, INC., and another, Respondents.

*October 5—October 31, 1967.*

564

For the appellant there was a brief by *Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For the respondent Krieck Furriers, Inc., there was a brief and oral argument by *Stanley S. Chmiel* of Appleton.

For the respondent Central Greyhound Lines there was a brief by *Bradford & Gabert* of Appleton, and oral argument by *Stanley Gabert.*

WILKIE, J. Three issues are raised on this appeal:

1. Was Krieck Furriers causally negligent in what it did or failed to do in connection with the packaging and delivery of the mink coat to Greyhound?

2. What is the extent of Greyhound's liability?

3. Was the value of the lost mink coat in excess of $1,200?

*Negligence of Krieck Furriers.*

Unquestionably Krieck Furriers was a warehouseman in connection with its storage of the coat.[1] The standard of care owed by a warehouseman is spelled out in sec. 119.22, Stats. 1963 (the statutes in effect at the time of this incident), as follows:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

But the trial court took the position that Krieck Furriers' status as warehouseman terminated when the coat

[1] For reasons we find persuasive the attorney general has concluded that furriers who store furs for a consideration are warehousemen. 22 Op. Atty. Gen. (1933), 965.

was removed from storage and started on its way to Chicago. We agree. Mrs. Sage and Krieck Furriers had a different arrangement once they agreed that the coat would be taken from the storage vaults and sent to Chicago for cleaning and glazing. An effective delivery took place terminating the status of Krieck Furriers as a warehouseman when, pursuant to the agreement, Krieck removed the coat from storage for the purpose of sending it to Chicago. Although the delivery was constructive in that Mrs. Sage did not have the coat placed in her hands so that it could then be turned over again to Krieck, the delivery nevertheless was effective.

Although the standard of care is prescribed by statute for a warehouseman, the standard of care established by court decision for a bailee for hire is that, in the absence of a contract to the contrary, the bailee owes a duty to exercise ordinary care as regards the subject of the bailment.[2] An agent must exercise ordinary care in the discharge of his duties and for negligence in failing to do so he will be liable to his principal.[3]

In essence the particular status occupied by Krieck Furriers at the time it undertook its responsibilities in connection with packaging and delivering the coat for cleaning and glazing is not crucial since in any event it owed the duty of exercising ordinary care. We, therefore, pass to a consideration of the trial court's finding that Krieck Furriers was not negligent in the conduct of its new responsibilities in connection with the packaging and transport of the coat prior to cleaning, glazing and remodeling.

In reviewing the trial court's finding in this respect, our standard is whether or not such finding is against the great weight and clear preponderance of the evidence.

[2] *Firemen's Fund Ins. Co. v. Schreiber* (1912), 150 Wis. 42, 47, 135 N. W. 507.

[3] *St. Paul Fire & Marine Ins. Co. v. Laubenstein* (1916), 162 Wis. 165, 168, 155 N. W. 918; Restatement, 2 *Agency* 2d, p. 178, sec. 379, comment *b*.

In discussing the alleged negligence of Krieck Furriers, the conduct of Krieck as an individual was all within the scope of his employment and his acts are imputable to Krieck Furriers.

Plaintiff claims that Krieck was negligent in allowing the package to be labeled "furs." It is contended that this labeling indicated a valuable package and created a temptation to potential thieves. Perhaps, in hindsight, it would have been more prudent to label the package "wearing apparel" or "women's coats." However,

". . . It is well established that harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence." [4]

The foreseeability required must be reasonable probability of harm, not a mere possibility. Labeling the package as containing furs was not a negligent act.

Plaintiff's principal claim is that Krieck was negligent in selecting Greyhound as the carrier. It claims that the $200 liability limit, which admittedly was known to Krieck, should have alerted Krieck that Greyhound was not a safe carrier. It is argued that other modes of transportation—railway express, the United States mail, or North Central Airlines—would have been safer. It was not negligent for Krieck to select Greyhound. No evidence was adduced to substantiate the claim that any other mode of transit would have been safer or that loss would not have occurred if a different carrier had been used. Krieck testified that he used Greyhound for similar business purposes for the last fifteen years and had shipped over 100 units to Chicago via Greyhound without a loss.

The only conceivable way in which the Greyhound selection could be deemed negligent would be that the shipment could not be insured for its full value but would be limited to $200. Thus the determinative question in this

[4] *Alsteen v. Gehl* (1963), 21 Wis. 2d 349, 362, 124 N. W. 2d 312.

case appears to be whether, under the circumstances, Krieck had a duty to select a carrier which would have allowed unlimited liability or, in the alternative, whether he should have secured insurance on his own to protect the coat during transit.

As an agent, and in the absence of instructions from Mrs. Sage to insure, or a habit of dealing between the parties requiring procurement of insurance, Krieck Furriers would have had no duty to secure insurance on its own to protect the coat during transit.[5]

It is undisputed that the question of insurance during transit was never discussed. Krieck was never instructed to insure the coat. There was no custom of insuring. In fact, the antithesis of a custom of insuring is present in the instant case. During the time the coat was stored with Krieck, Mrs. Sage was never charged an additional fee for insurance coverage. She paid only storage charges and specifically declined to be included in the insurance coverage provided by Krieck. She informed Krieck that her personal insurance covered the coat and consequently additional insurance was refused. If Krieck had selected an alternative mode of transportation and, knowing that insurance covered the coat, had procured additional insurance, he would have subjected Mrs. Sage to an unnecessary extra expense.

In light of the foregoing, Krieck had a right to assume that Sage's insurance covered the trip to Chicago (which it did) and the furrier was not negligent in not reinsuring the coat.

### Greyhound's Liability.

Greyhound was clearly negligent in failing to perform its part of the shipping contract by not safely delivering the coat to its destination in Chicago. Therefore, as to Greyhound, the issue is whether Greyhound can limit its

---

[5] *See* 8 Am. Jur. 2d *Bailments*, p. 1017, sec. 124.

liability for damages resulting from that negligence to $200.

The package in question was shipped in interstate commerce under the terms of a uniform bus bill. The bus bill requires the shipper to declare the value of his shipment. The bus bill states that its provisions are subject to "tariff regulations." Greyhound's tariff schedule filed with the Interstate Commerce Commission states that "No single *shipment* will be accepted for transportation which exceeds two hundred ($200.00) dollars in declared or released value . . . ." The declared value noted on the bus bill for the shipment in question is $200. It would have been contrary to 49 U. S. C. sec. 317 (b) [6] for Greyhound to accept a package at a declared valuation which exceeded $200.

Without any limitations of liability, a carrier would be accountable for the actual value of goods lost. A motor carrier in interstate commerce may limit its liability when it does so in compliance with an Interstate Commerce Commission order authorizing special rates dependent upon a declaration of value.[7]

In this case, Greyhound has successfully limited its liability. The limitation was called to the attention of Krieck when he delivered the package to the bus depot. Krieck testified that he had actual knowledge that Greyhound's liability was limited to $200. Krieck was, in effect, given the option of declaring a value within the range of $50 to $200 ($50 being the minimum liability expressed on the bus bill).

In *Wegener v. Chicago & N. W. R. R.*[8] we held that tariffs such as those in the instant case, which are reasonable conditions affecting the shipment, are valid and binding upon the shipper.

---

[6] 49 U. S. C. sec. 317(b) forbids common carriers by motor vehicle from deviating from rates and regulations enumerated in the tariffs.

[7] 49 U. S. C. sec. 20(11).

[8] (1916), 162 Wis. 322, 156 N. W. 201.

It is undisputed that the value of the package was never discussed. Krieck's statement that the package contained "furs," standing alone, without explanation, was not enough to alert the bus company employee that he was handling an expensive item. "Furs" is an equivocal word and does not necessarily connote high valuation. The case of *Grace & Co. v. Railway Express Agency*,[9] relied upon by the plaintiff, is distinguishable. In *Grace*, a 50-pound package of platinum was received for shipment by the Railway Express Agency, Inc. The shipper declared a value of $50. The New York Court of Appeals held that Railway Express could not limit its liability to $50 because Railway's tariffs required that precious metals such as platinum had to be received and carried under a "money classification" and not under a "merchandise classification" and that the statement that the package contained platinum should have alerted Railway's employee to charge a different rate. In the case at bar, Greyhound, unlike Railway Express, has complied with its tariff schedule.

The trial court correctly limited Greyhound's liability to $200 and, since Krieck disbursed the full $200 he received to the owners of the cloth coats, it correctly held that the plaintiff could recover $171.43, which sum represented the proportion of the value of the fur coat to the whole package.

### Value of the Coat.

The trial court found that the value of the mink coat was $1,200. This finding is based on the testimony of Mr. Abe Ugent, who was the national vice-president of Master Furriers' Guild of America and had been the local president of the Associated Fur Industries of Wisconsin for ten years. He had thirty-two years of experience in purchasing furs on the New York market and in the

---

[9] (1960), 8 N. Y. 2d 103, 168 N. E. 2d 362.

Milwaukee area. Based on the coat's age, its depreciation, style changes, and loss of color, he stated that the fair market value of the coat at the time of loss was $1,200.

There was other evidence that Krieck had submitted a loss claim stating the value of the lost coat as $2,500. At the trial he testified that the fur coat's market value at the time of loss was $1,800. Warehouse receipts to Mrs. Sage over a period of years were produced, which receipts specified a value of $100 up to $3,000.

Yet, the trial court was free to base its finding on the testimony of Mr. Ugent and its finding is clearly not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

HALLOWS, J. (*dissenting*). The majority's reasoning does not comport with what the average mass of mankind considers the duty or responsibility of a professional furrier as a warehouseman or bailee is toward his customer. Shipping a valuable fur coat in a cardboard box with two inexpensive coats, the box being marked to indicate the contents were furs, on a bus system, the main business of which is the transportation of passengers and only incidentally packages and knowingly underinsuring the goods, is just plain negligence on the part of a furrier for hire. It may be the procedure was reasonable for the inexpensive coats, but no woman would have shipped her mink coat as this one was shipped and no furrier should do it at its owner's risk without her consent. I would allow recovery against Krieck Furriers, Inc., in the amount of $1,200.