CONCERNED PARENTS TO SAVE DRE-HER PARK CENTER, Deborah Berris, Joycelyn Thomas, Stephen Lord, Chad Johnson, Tor Lind, Michael Potente, Maria Blasi, Laurie Mullis, Karrie Pitman, Duncan Cruickshank, James Irwin, and Frances Irwin, Plaintiffs,

v.

CITY OF WEST PALM BEACH, Defendant.

No. 93–8532–CIV–RYSKAMP.

United States District Court, S.D. Florida.

May 26, 1994.

James K. Green and David Gorman, West Palm Beach, FL, for the American Civ. Liberties Union of Florida, Inc., Palm Beach Chapter.

Holland & Knight, Stephen F. Hanlon, and Robert Rivas, West Palm Beach, FL, for City of West Palm Beach.

## CONSENT JUDGMENT

RYSKAMP, District Judge.

This cause came before the Court on a stipulation of the plaintiffs and the defendant, the CITY OF WEST PALM BEACH (the "City"), for the entry of a Consent Judgment. The Court has approved and adopted the stipulated Consent Judgment and enters the following judgment according thereto:

This action is brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"). The action was removed from the 15th Judicial Circuit Court of Florida to this Court and this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1441 and the ADA.

On March 1, 1994, the Court executed an Order Granting Preliminary Injunction. 846 F.Supp. 986. That Order made certain findings of fact, some of which are repeated here. This Consent Judgment controls in the event of any conflicting findings of fact or conclusions of law.

Since 1986, the City of West Palm Beach has operated certain leisure services programs at its Dreher Park Center for persons with physical and mental disabilities. The Dreher Park Center programs placed the City in the forefront of municipal governments in providing superior access for disabled people to the City's overall leisure services programming.[1]

Because neighboring municipalities provided inadequate recreational programs for the disabled, the Dreher Park Center programs for the disabled attracted many participants who did not live in the City. Non-residents in City recreational programs for the non-disabled typically numbered about 30 percent, but that ratio was inverted in the Dreher Park Center programs. Non-residents numbered about 70 percent.

Due primarily to unsound budgeting practices during prior years, the City made severe reductions in the budgets of all departments during the latter part of the 1992–93 fiscal year. In these budget cuts, the City terminated more than 100 employees and took a variety of other measures, such as more than doubling fees charged to participants in the City's leisure services programs for the non-disabled.

City commissioners sought to cut programs used disproportionately by non-residents and therefore cut funding of the Dreher Park Center programs from roughly $165,000 to $83,000. Then the City administration decided to use the remaining $83,000 to enter into a contract with an outside agency to provide comparable services. The contract also called for the outside agency to undertake to persuade neighboring municipal governments to participate in a regional cooperative recreational program for the disabled. Meanwhile, however, because the contract with the outside agency was not finalized until May of 1994, the City ceased providing recreational programs of the type formerly offered at Dreher Park Center.

■ In its Order Granting Preliminary Injunction, the Court concluded that the plaintiffs were denied the benefits of the City's leisure services program in contravention of Title II of the ADA when the Dreher Park Center programs were eliminated. The City argues that its elimination of the Dreher Park Center program was motivated not by discrimination by reason of the plaintiff's disabilities, but by reason of discrimination against non-residents. Regardless of the City's motive or intent, the ADA forbids action that carries with it a discriminatory effect, and the effect of the elimination of the Dreher Park Center program was to discriminate against the disabled, both residents and non-residents of West Palm Beach.

■ The Court's Order Granting Preliminary Injunction was buttressed in part by a finding that the depth of the budget cut affecting the Dreher Park Center programs was disproportionally more severe than the depth of the budget cut overall for recreational programs. The City argues that "discriminatory budget cutting," standing alone, does not in this case establish a violation of the ADA, and could not in any case. While the City's argument on this point, standing alone, may have merit, the Court need not

1. The programs included the "Jammin' in the Sun" Summer Day Camp for children with mental, learning and attention deficit disabilities, and hearing impairments; the "Awesome Adventurers' Club," in which up to 12 disabled children met once a month to play sports and games, create crafts and explore local attractions; "Sib Shop," which provided group discussions and activities once a month for the brothers and sisters of children with disabilities; "Leisure Alternatives," a program twice a week during seven months of the year for adults with mental disabilities to set and work toward fitness goals; "T.G.I.F.!" a program twice a month for adults with mental and learning disabilities to go to dances, movies, community performances and sporting events; Little League Baseball for Dis-

abled Youth, aged 6 to 18, with physical and mental disabilities; the "Good Times Club," a program held once a month for adults with visual impairments; Social for Visually Impaired Adults, held once a month; the "Out and About Club," a program held on four occasions per year for youth with visual impairments and sighted friends to go on community outings; Deaf Senior Activity Club, which provided speakers on nutrition and fitness and community outings, card games and other activities for adults with hearing impairments; Lip Reading Instruction, an eight-week class for people with hearing impairments; and Swim for Physically Challenged, which was available twice a week between June and August.

**426**

decide this case based on the fact of discriminatory budget cutting. The elements required to prove that the City violated Title II of the ADA are:

1. That the benefits of a City program were requested by a "qualified individual with a disability," which means a disabled person who otherwise meets the "essential eligibility requirements" to participate in the program;

2. That the individual was either excluded from participation in or denied the benefits of the City's leisure services program or was otherwise discriminated against;

3. That such exclusion or denial of benefits was by reason of the individual's disability.

■ The Court finds that the 12 named plaintiffs were qualified persons with disabilities. Although some of the individual named plaintiffs were non-residents, the City could not deny access to recreational programming to non-resident disabled persons because the City did not deny access to non-residents in the programs for the non-disabled. Under the circumstances of this case, it is clear that the plaintiffs requested the benefits of the City's leisure services programs, and that such programs existed for the non-disabled population, whether residents or not.

■ Yet, as of the effective date of the elimination of the Dreher Park Center programs, the City no longer offered any programs specifically for the plaintiffs. The evidence further established that the plaintiffs could not participate in the programs offered to the non-disabled populations and required special services, none of which were available after the elimination of the Dreher Park Center programs. The City, therefore, denied the benefits of the City's leisure services program to the plaintiffs by reason of the plaintiffs' disabilities.

Such a denial violated the ADA. Therefore, the City is liable to the plaintiffs.

The City has filed a motion to dismiss Concerned Parents to Save Dreher Park Center as a party plaintiff, arguing that the group lacks associational or representational standing to bring suit in behalf of its members. This judgment is without prejudice to the City's motion to dismiss Concerned Parents.

**DONE AND ORDERED.**