Jessie E. WRAY and Mary
A. Wray, Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a Amtrak,
Defendant.

No. 96–C–1295.

United States District Court,
E.D. Wisconsin.

June 23, 1998.

Lisa C. Paul, Croen & Barr, Milwaukee, WI, for Plaintiffs.

Kevin P. Whaley, Susan R. Maisa, Jennifer M. Tenhaeff, Foley & Lardner, Milwaukee, WI, Dennis M. Moore, National R.R. Passenger Corp., Washington, DC, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Jessie and Mary Wray filed this action claiming disability discrimination under Titles II and IV of the Americans With Disabilities Act ("ADA"), after defendant, National Railroad Passenger Corp. ("Amtrak"), refused to allow them to sit in the disability seating section of a train traveling from Chicago to Memphis. Plaintiffs claim that defendant violated 42 U.S.C. § 12203(b) of the ADA by coercing or interfering with the exercise of their rights under the ADA. Plaintiffs also bring a supplemental state law claim alleging negligence on the part of Amtrak in connection with its treatment of them.

The court has jurisdiction of the ADA claim pursuant to 28 U.S.C. § 1331 and § 1343, and of the supplemental claim under 28 U.S.C. § 1367(a). Venue is proper because Amtrak does business here. Before me now is defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND

On February 9, 1995, plaintiffs traveled via Amtrak from Milwaukee to Memphis, via Chicago. Both plaintiffs are elderly and suffer from a variety of medical conditions. Their trip from Milwaukee to Chicago was uneventful. Amtrak personnel assisted them in getting on and off the train. Plaintiffs' problems began when they got to Chicago. The train from Chicago to Memphis consisted of two-level cars, one of which was accessible to disabled passengers. This car had thirteen disability-accessible seats on the lower level. Amtrak assigns the disability-accessible seats to passengers who reserve them when purchasing tickets. Plaintiffs did not make such reservations.

When plaintiffs boarded the train in Chicago a train attendant permitted them to sit in two of the thirteen disability-accessible seats. As the train prepared for departure, however, a train attendant ascertained that six passengers, including plaintiffs, were sitting in disability-accessible seats without reservations, thereby preventing passengers with reservations from sitting in them. The conductor, Thomas Pleasants, attempted to resolve the problem by asking passengers in the disability-accessible seats to volunteer to move upstairs. When no one volunteered, he asked two passengers who appeared to be in relatively good physical condition to move upstairs, and they agreed to move. He then approached two other passengers who also agreed to move. The conductor then approached plaintiffs, who appeared to him to be relatively able, and twice requested that they move upstairs. Plaintiffs refused to move, claiming that they had requested dis-

ability services and seating from Amtrak. The conductor checked the train manifest which disclosed that plaintiffs had not reserved disability-accessible seats. He then firmly requested that plaintiffs move, stating that if they refused he would call the police. Ultimately, plaintiffs moved to the upper level of the car.

Apparently plaintiffs had no further contact with the conductor or with other train attendants for the rest of the trip. For plaintiffs the rest of the trip was quite unpleasant. Mrs. Wray has arthritis and took medication requiring her to use the bathroom frequently. The restroom was on the lower level and, since the stairs were narrow and steep, she urinated several times before reaching the bathroom causing her discomfort and humiliation. Plaintiffs also allege that they were injured when Amtrak failed to help them alight from the train and carry their luggage. Additional facts will be stated where appropriate.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Once the moving party has set forth its affidavits and portions of the record that demonstrate the lack of any issue of material fact, the adverse party may not rest upon mere allegations or denials, but must set forth a specific showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering the defendant's motion for summary judgment, this court must ascertain whether, if the record of the summary judgment motion were the trial record, a reasonable jury could find in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572–73 (7th Cir.1989). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

The subjective beliefs of the plaintiff are not sufficient to create a genuine issue of material fact. *McMillian v. Svetanoff*, 878

F.2d 186, 190 (7th Cir.1989). Summary judgment is proper, even if issues such as motive and intent are at stake, where the party alleging intentional misconduct presents no evidence of motive or intent supportive of their position. *See, e.g., Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986); *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Moreover, neither the "mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the demonstration of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, will sufficiently demonstrate a genuine issue of material fact. In that regard, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. ANALYSIS

### A. The Plaintiffs' ADA Claim

This is a relatively unusual type of ADA case because it involves a claim of discrimination against Amtrak in violation of 42 U.S.C. § 12161 et. seq. The claim falls under Title II, Part B, subpart II, and Title IV of the ADA, which prohibit discrimination by companies engaged in intercity and commuter rail. Section 12161(3) defines " 'intercity rail transportation' " as transportation provided by Amtrak.

To establish a violation of these provisions, the plaintiffs must show that (1) they are qualified individuals with disabilities; (2) Amtrak denied them the benefits of its services or otherwise discriminated against them; and (3) such discrimination was by reason of their disabilities. *Tyler v. City of Manhattan*, 857 F.Supp. 800, 817

(D.Kan.1994). A plaintiff has a "disability" for the purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more of the major life activities," (2) has "a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2). For purposes of the summary judgment motion defendant does not contest that both plaintiffs are disabled.

With respect to the second material element, that Amtrak discriminated against plaintiffs, defendant argues that 42 U.S.C. § 12162(a)(1) provides the appropriate legal standard. This provision requires Amtrak to have at least "one passenger car per train" that is disability-accessible.

■ Amtrak assigns the thirteen disability-accessible seats in a non-discriminatory way to those who reserve them at the time they purchase tickets. The disability-accessible seats were reserved in advance by persons other than plaintiffs. Although Mr. Wray states that he advised Amtrak of his and his wife's disabilities, the record shows that he did not reserve disability-accessible seats, and that plaintiffs' names were not on the list of people with reservations maintained by Amtrak. Thus, defendant complied with the one-car-per-train rule and had a neutral reservation system for allocating the thirteen disability-accessible seats in the car.[1]

It is undisputed that when the conductor entered the disability-accessible car in Chicago all thirteen seats were occupied, some by people, including plaintiffs, without reservations. Mrs. Wray testified to this effect as did conductor Pleasants. The statement of another passenger that at some subsequent time on the trip not all disability-accessible seats were occupied does not contradict this evidence.

■ Plaintiffs concede that defendant complied with the one-car-per-train rule but argue that defendant violated 42 U.S.C. § 12203(b), which makes it unlawful to "coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of" any right protected by the ADA. Plaintiffs' principal argument in support of

their claim of discrimination is that when conductor Pleasants asked them to move out of the disability-accessible seats, he "coerce[d]" them in violation of § 12203(b). Most of the cases interpreting § 12203 are "retaliation" cases arising in an employment context. The language of the statute and what case law there is, however, make clear that to establish a violation of § 12203 plaintiffs must show that when the coercion took place they were exercising or enjoying a right protected by the ADA. *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446 (7th Cir. 1995); *Doe v. Kohn, Nast & Graf, P.C.*, 866 F.Supp. 190 (E.D.Pa.1994).

■ The question, therefore, becomes whether, when conductor Pleasants directed plaintiffs to move out of the lower level disability-accessible seats, plaintiffs were enjoying a right protected by the ADA. Put slightly differently, the question is: does the ADA grant plaintiffs a right to sit in the disabled seating section, notwithstanding that they did not have reservations and that there were more disabled passengers than there were available seats? This court's answer to that question is "no." Amtrak's reservation system is a reasonable response to the problem of excess demand, and the ADA does not give plaintiffs a right to override it. That a train attendant earlier permitted plaintiffs to sit in the disability seating section does not change this analysis. Under the circumstances, defendant had a right to ask plaintiffs to move. The conductor surely could have handled the situation more adroitly. He behaved toward plaintiffs in a manner that they regarded as unpleasant and intimidating. But because plaintiffs did not have an automatic right under the ADA to stay put, he did not violate §12203(b). Therefore, defendant did not commit an act of discrimination.

■ To prove a case under the ADA, plaintiffs must not only show a discriminatory act but also that the act was committed "by reason of" plaintiffs' disabilities. *Tyler,* 857 F.Supp. at 817. To establish the "by reason of" requirement, plaintiffs must demonstrate that defendant's motive or intent was to discriminate or, at least, that the

---

1. The facts of this case suggest that the one-car-per-train rule might be worthy of review. For

one thing the rule does not address the number of seats which must be accessible to the disabled.

effect of defendant's action was discriminatory based on plaintiffs' disability. *Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach,* 853 F.Supp. 424, 424–26 (S.D.Fla.1994). Here, there is no evidence that the conductor requested plaintiffs to move "by reason of" their disabilities. He asked plaintiffs to move because they appeared less disabled than other passengers in the car. While conductor Pleasants may have underestimated the severity of plaintiffs' medical conditions, he did not single them out "by reason of" their disabilities.

Thus, plaintiffs cannot establish either that defendant discriminated against them or that defendant acted by reason of plaintiffs' disabilities. Therefore, I will grant defendant's motion for summary judgment on plaintiffs' ADA claims.

## B. Retention of Jurisdiction of Plaintiffs' State Law Claim

■■■ Having dismissed plaintiffs' federal claims, I must decide whether to retain jurisdiction of plaintiffs' supplemental claims. Under 28 U.S.C. § 1367(c)(3) I have discretion in deciding this question. I am to consider such factors as fairness to the litigants and appropriate allocation of judicial resources. It is not improper for a district court to maintain jurisdiction where state law claims are ripe for decision, applicable state law is straightforward, the litigation is over a year old, and discovery has been completed. *Timm v. Mead Corp.,* 32 F.3d 273, 277 (7th Cir.1994). Consideration of these factors suggests that I should retain jurisdiction. This case is over two years old, discovery is complete, the state law involved is uncomplicated, and the case is set for trial in several weeks. It would make little sense to require the parties to start over with a new judge in state court. Therefore, I will retain jurisdiction.

## C. Plaintiffs' Negligence Claim

Plaintiffs allege that Amtrak was negligent in its treatment of them during their trip from Chicago to Memphis. This claim is based on common law tort principles. Defendant has moved for summary judgment on the plaintiffs' negligence claim as well. I address the summary judgment issue under the same standard of review as stated in Section II of this decision.

■■■ A federal court analyzing a state law claim follows state substantive law. If there is an issue as to which state's law applies, the court will apply the law of the forum state except where the laws of the states in question differ. *See, Railway Express Agency, Inc. v. Super Scale Models, Ltd.,* 934 F.2d 135, 139 (7th Cir.1991); *Select Creations, Inc. v. Paliafito America, Inc.,* 828 F.Supp. 1301 (E.D.Wis.1992). Only when there is a difference in state laws that will affect the outcome of the case does the court need to resort to conflict of law rules. *Ziolkowski v. Caterpillar, Inc.,* 800 F.Supp. 767 (E.D.Wis.1992). Here, plaintiffs have asserted that Illinois law applies. However, on the issues in this case there is no difference between Illinois law and Wisconsin law. Therefore, I will apply Wisconsin substantive law.

■■■ Under Wisconsin law, to prove a negligence claim plaintiffs must show a duty of care upon the defendant, a breach of that duty, a causal connection between defendants' conduct and plaintiffs' injury, and damage to plaintiffs. *Hammann v. United States,* 24 F.3d 976, 979 (7th Cir.1994). A common carrier must exercise the highest degree of care toward passengers consistent with its mode of conveyance practical operation. *Bradford v. Milwaukee & Suburban Transp. Co.,* 25 Wis.2d 161, 130 N.W.2d 282 (1964); Wis. JI—Civil 1025 (1989). A common carrier has a duty to take reasonable action to protect passengers against unreasonable risk of physical harm. *Lloyd v. S.S. Kresge Co.,* 85 Wis.2d 296, 302, 270 N.W.2d 423 (Ct.App.1978); *Restatement (Second) of Torts* § 314A(1) (1965).[2]

---

2. *Restatement (Second) of Torts* § 314A(1) provides:

A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

 Some courts have held that when a common carrier is on notice that a passenger is disabled or infirm it must exercise a higher degree of attention and care for that passenger than for passengers who are in good health. *Sullivan v. Yellow Cab Co.,* 212 A.2d 616 (D.C.Ct.App.1965); 14 Am.Jur.2d *Carriers* § 956 (1964). Moreover, although the general rule is that a common carrier is not required to help a passenger deboard a train, the existence of special circumstances such as the passenger being burdened with parcels, illness or apparent infirmity, may create such a duty. *Smith v. Chicago & N.W. Ry. Co.,* 246 Wis. 628, 632, 18 N.W.2d 352 (1945); *Dorcey v. Milwaukee Electric Ry. & Light Co.,* 186 Wis. 590, 593, 203 N.W. 327 (1925); *Werner v. Chicago & N.W. Ry. Co.,* 105 Wis. 300, 81 N.W. 416 (1900); *McDermott v. Chicago & N. Ry. Co.,* 82 Wis. 246, 251, 52 N.W. 85 (1892).

In this case, defendant had notice that plaintiffs had medical problems. In his deposition, the conductor stated: "I am especially concerned about anyone who believes they belong in the lower level seating because if they believe that they belong there, that means that they're operating with some sort of physical problem." (Pleasants' Dep. at 86.)

 Defendant contends, however, that because Amtrak's tariff permits Amtrak to move passengers to different seats, plaintiffs' negligence case must be dismissed as a matter of law. Amtrak's tariff is implicated by language on the back of Amtrak tickets stating that the "carriage hereunder is subject to the Conditions of Contract and the rules and regulations of Amtrak." The tariff provides that: "Amtrak reserves to itself full control and discretion as to seating of passengers, and Amtrak reserves the right to change such seating at anytime during a trip" and "Amtrak reserves the right, whenever operating conditions require, to transfer passengers from one car or train to another en route." The terms of the tariff are binding on plaintiffs. *Insurance Co. of North America v. Krieck Furriers, Inc.,* 36 Wis.2d 563, 153 N.W.2d 532 (1967).

 I agree with Amtrak that the language of the tariff precludes a finding of negligence based on Amtrak's directing plaintiffs to move from the disability-accessible seats. The tariff gave Amtrak the right to take this action. The record, however, does not foreclose the possibility that Amtrak violated its duty of care as a common carrier in other ways. Plaintiffs allege that because defendant had notice of their disabilities, defendant might have been able to prevent some of the damages which plaintiffs allegedly suffered. It may have been possible, for example, for defendant to seat plaintiffs closer to a restroom or to permit them to return to disability-accessible seats, when and if such seats became available, or to help them with luggage or in deboarding.

On the record before me it is possible that a reasonable jury could find that defendant failed to satisfy its duty of care to plaintiffs. On the issues of causation and damages plaintiffs have shown enough evidence to get to a jury. Therefore, plaintiffs' negligence claim survives defendant's motion.

**THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** with respect to plaintiffs' claims under the Americans with Disabilities Act and **DENIED** with respect to plaintiffs' negligence claim.